UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| **RALEIGH PETE BLACKBURN,** | **CIVIL ACTION NO. 7:18-56-KKC** |
| Plaintiff, | |
| V. | **ORDER AND OPINION** |
| **NANCY A. BERRYHILL**<br>**Acting Commissioner of Social Security,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgement. (DE 13 and 15). The Plaintiff, Raleigh Pete Blackburn, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying his claim for disability insurance benefits from May 2014 through June 2016. (DE 1 at 2.) The Court, having reviewed the record, will affirm the Commissioner's decision because it is supported by substantial evidence and was decided by the proper legal standards.

## FACTUAL AND PROCEDURAL BACKGROUND

In the present case, Blackburn filed an application for disability insurance benefits, alleging a disability beginning on May 5, 2014. (Administrative Record ("AR") at 18.) The claim was denied initially and upon reconsideration. (AR at 18). Thereafter, Blackburn requested a hearing, which was held in front of an Administrative Law Judge ("ALJ"). (AR at 18.) Following the hearing, the ALJ determined that Blackburn was not disabled from May 5, 2014 through June 1, 2016. (AR at 23.) However, the ALJ concluded that Blackburn became disabled beginning on June 1, 2016. (AR at 28.) Blackburn is now contesting the

1

ALJ's determination that he was not disabled from May 5, 2014 through June 1, 2016. (DE 1 at 3.)

This Court's review of the decision by the ALJ is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

In partially denying Blackburn's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that the claimant has not engaged in substantial gainful activity since May 5, 2014. (AR at 20.)

At step two, the ALJ determined that since the alleged onset date of disability, May 5, 2014, Blackburn has suffered severe impairments of "degenerative disc disease, degenerative joint disease, chronic obstructive pulmonary disease (COPD)/black lung disease, obesity, and bilateral hearing loss." (AR at 20).

At step three, the ALJ found that, prior to June 1, 2016, Blackburn did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (AR at 22.)

Before proceeding to step four, the ALJ determined that Blackburn had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567 (b). (AR at 23.) The ALJ found that Blackburn was able to stand or walk for four hours—alternating between sitting and standing in place every 30 minutes; occasionally balance; and reach in front laterally at chest level. (AR at 23.) Consequently, the ALJ determined that, prior to June 1, 2016, Blackburn could perform light work in a non-production-oriented work setting. (AR at 23.)

At step four, the ALJ found that Blackburn was unable to perform his past relevant work as a blaster pursuant to 20 C.F.R. § 404.1565. (AR at 27.)

At step five, the ALJ determined that prior to June 1, 2016, Blackburn retained the ability to perform other jobs that existed in significant numbers in the national economy and therefore, was not disabled. (AR at 27.)

## ANALYSIS

Blackburn challenges the ALJ's finding that he was not disabled prior to June 2016. (DE 1 at 3.) He argues that controlling weight should have been given to his treating physician's opinion that he was disabled and unable to perform "any job duties" in 2014 and 2015. (DE 13-1 at 2; AR at 710-11 and 964-66.)

The ALJ concluded that, prior to June 2016, Blackburn had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). (AR at 23.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Light work also "requires a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. In her opinion, the ALJ states:

> I find that prior to June 1, 2016, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except he was able to stand/walk for four hours of eight hours; he must have been able to alternate between sitting and standing in place every 30 minutes; he could occasionally balance; he could never kneel/crawl; he was unable to reach overhead bilaterally; he could frequently reach in front and laterally at chest level; he must avoid any/all exposure to hazards/temperature extremes (hot and cold)/ humidity/ wetness/ vibration/ pulmonary irritants; and he could perform unskilled (SPV 2) work in a non-production oriented work setting. (AR at 23.)

The ALJ's determination that Blackburn could perform light work prior to June 2016 was based on substantial evidence. "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(internal citations omitted). When an ALJ's decision is based on substantial evidence, it is not subject to reversal even if substantial evidence would also have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Accordingly, "the Commissioner's decision must stand if supported by substantial evidence." *See Tyra v. Sec'y of Health & Human Servs.*, 859 F.2d 1024, 1028 (6th Cir. 1990).

The ALJ considered opinion evidence, medical records, Blackburn's reported symptoms, and testimony in determining that he was not disabled prior to June 2016. (*See* AR at 20-28.) Blackburn, who has been examined by multiple physicians, asserts that his treating physician's opinion, Raymond Bishop M.D., should have been given controlling weight in determining whether he was disabled. (DE 13-1 at 2.)

ALJ's must give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion…is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id.* A finding that the treating physician's opinions are inconsistent with the record is a sufficient reason for discrediting those opinions. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006).

Dr. Bishop completed multiple Attending Physician's Statements in 2014-2015 opining that Blackburn was permanently disabled due cervical and lumbar radiculopathy and unable to perform "any job duties." (AR at 710-11 and 964-65.) When developing Blackburn's RFC, the ALJ gave Dr. Bishop's statements little weight in part because opinions that a person is "disabled or unable to work" are issues reserved for the Commissioner's determination. 20 C.F.R. § 404.1527(d). (AR at 26.)

4

But in addition, Dr. Bishop's opinions are unsupported, and even contradictory to other substantial evidence in the record.

Blackburn's Function Report, other physician's opinions, and medical records contradict Dr. Bishop's opinion that Blackburn was not able to perform "any job duties." The ALJ thoroughly examined Blackburn's medical history and provided "good reasons" for not giving Dr. Bishop's opinion controlling weight.

Blackburn's Function Report, which was taken in August 2014, shows that he was able to learn, understand, recall, and use information. (AR at 21-22 and 236-44.) There was additionally no evidence of severe difficulties in maintain social functioning. (AR at 22.) The ALJ explains that—

> [Blackburn] has the mental functional capacity to perform at least unskilled work as he is able to understand, carry out, and remember simple instructions and tasks. [He] is also able to use judgment; respond appropriately to supervisors, co-workers, and usual work situations; and deal with changes in a routine work setting. (AR at 22.)

The Function Report also shows that Blackburn was able to care for his own personal needs and perform a variety of daily activities, including using a microwave, vacuuming, taking out the trash, attending church, watching television, reading, visiting family, preparing meals, doing light repairs, driving, and shopping. (AR at 236-44.) The ALJ gave the Function Report great weight and concluded that Blackburn's mental capacity and daily activities were consistent with an RCF to perform light work prior to June 2016. (AR at 24.)

On September 23, 2014, Dr. Robert Nold conducted a consultative medical evaluation of Blackburn's condition. (AR at 724.) At this examination, Blackburn had equal bilateral lung expansion with some scattered rhonchi, normal strength in all four extremities, a normal gait, and the ability to hear normal conversation and speech. (AR at 21, 25, and 724-28.) Additionally, Blackburn stated that he was only taking Motrin

5

for pain as needed. (AR at 726.) Dr. Nold opined that Blackburn could occasionally bend and life 25-30 pounds and frequently lift 10 pounds. (AR at 728.) He also opined that Blackburn would have difficulty walking upstairs or over the course of two blocks, especially on uneven terrain. (AR at 728.) The ALJ gave partial weight to this opinion. (AR at 25.) She found that the suggested lifting limitations were consistent with light work. (AR at 25.) However, she gave little weight to the ambulatory limitations because they were not consistent with Blackburn's normal gait and extremity strength at this examination and following examinations. (AR at 25.)

Blackburn was also examined by Dr. Adam Akers for workers' compensation purposes on July 21, 2014. (AR at 25.) Dr. Akers opined that Blackburn should avoid repetitive bending, twisting, lifting carrying, and continuous sitting and driving. (AR at 706.) Additionally, he opined that Blackburn should not lift more than 20-25 pounds. (AR at 706.) The ALJ gave this opinion partial weight stating that the overall opinion suggests that the claimant would have the RFC to perform light work. (AR at 25.)

Dr. Robert Hoskins also conducted an independent medical examination for workers' compensation purposes on September 8, 2014. (AR at 25.) Dr. Hoskins reported a "slow gait," and he opined that the claimant should not lift more than 25 pounds, sit more than 60 minutes at a time, stand or walk for more than 45 minutes at a time, perform any repetitive stooping overhead work, kneel, climb, balance, crouch, or crawl. (AR at 716 and 720-21.) The ALJ gave this opinion partial weight, finding that the overall opinion suggests that Blackburn had the exertional capacity to perform light work. (AR at 25.) However, the ALJ disagreed with the postural limitations and slow gait because his future medical records do not support such limitations and show a normal gait. (AR at 25.)

6

Throughout 2014 and 2015, Blackburn complained of shoulder pain, knee pain, and chronic low back pain, which improved with the use of Tramadol and Gabapentin. (*See e.g.*, AR at 231, 747, 759, and 818.) Blackburn's medical records show degenerative changes of the cervical spine, but only mild degenerative changes of the knees. (AR at 747, 763, and 827.) An examination of Blackburn in February 2016 shows a normal gait, and his musculoskeletal, neurological, respiratory, and psychiatric examinations were all within the normal limits through June 2016. (AR at 803-15 and 889.) In May 2016, Blackburn's lungs were clear to auscultation bilaterally and not in distress. (AR at 852-53.) Additionally, through June 2016, there was no evidence of mental health treatment or psychiatric examinations. (AR at 803-15.)

The ALJ considered the foregoing in determining that Blackburn had an RFC to perform light work between May 2014 and June 2016. (AR at 17-28.) She provided good reasons for giving Dr. Bishop's opinion that Blackburn could not perform "any job duties" little weight. His opinion was inconsistent with other substantial evidence in the record—(1) Blackburn's Function Report indicated that he had sufficient mental capacity to perform light work; (2) his daily activities were consistent with light work; (3) three physicians who examined Blackburn gave opinions regarding his condition that were consistent with an RFC to perform light work; (4) Blackburn's medical records show normal extremity strength and a normal gait through June 2016; and (5) Blackburn's medical records from spring-2016 show no respiratory, neurological, or psychiatric problems.

The ALJ considered Blackburn's RFC and age, education, and work experience limitations to determine that there were jobs that existed in significant numbers in the national economy which Blackburn could fulfill. (AR at 27-28.) The Vocational Expert indicated that, given all these factors, Blackburn would have been able to perform the

requirements of occupations including garment bagger, paper pattern folder, and fruit cutter. (AR at 28.) Accordingly, the ALJ justifiably found that Blackburn was not disabled between May 2014 and June 2016.

This finding is not inconsistent with a determination of disability beginning in June 2016. Beginning in June 2016, Blackburn' medical records reflect worsening respiratory impairments, back pain, and joint pain. (AR at 834-36, 910-18, and 919-61.) It was also in June 2016 that Blackburn sought treatment for his breathing problems. (AR at 834-36 and 910-18.) Blackburn's declining condition and combination of ailments post-June 2016 lead to the ALJ's conclusion that Blackburn became disabled at that time.

Although there was evidence which would tend to support a disability determination prior to June 2016—Blackburn's complaints, reported slow gait, and Dr. Bishop's statements that he was disabled and cannot perform "any job duties"—the ALJ's determination that Blackburn was not disabled from May 2014 through June 2016 was supported by substantial evidence. Considering his medical history in its entirety, a reasonable mind could accept the evidence as "adequate to support a conclusion" that Blackburn was not disabled. *See Longworth*, 402 F.3d at 595. Accordingly, the Commissioner's decision must stand. *See Tyra*, 859 F.2d at 1028.

## CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) The Plaintiff's Motion for Summary Judgment (DE 13) is **DENIED**;

(2) The Defendant's Motion for Summary Judgment (DE 15) is **GRANTED**;

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) A judgment will be entered contemporaneously with this order.

Dated April 15, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY